UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

KISHA CHILDREY and DIANE WILSON,        Case No. 1:05-CV-446
Jointly and Severally,

        Intervening Plaintiffs,

                                              HON. GORDON J. QUIST
v.

SPECTRUM HEALTH WORTH HOME
CARE, INC.,

        Defendant.
_____/

## **OPINION**

        Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed this case on June 28, 2005, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, and Title I of the Civil Rights Act of 1991, alleging that Defendant, Spectrum Health Worth Home Care, Inc. ("Worth"), violated Title VII by failing to take reasonable care to prevent its employees, Kisha Childrey ("Childrey") and Diane Wilson ("Wilson"), and other similarly situated individuals, from being subjected to racial and sexual harassment by Kyle Briggs ("Briggs"), one of Worth's clients. On September 8, 2005, the Court entered a Memorandum Order granting Childrey and Wilson's motion to intervene and permitting them to assert claims under both Title VII and 42 U.S.C. § 1981. Now before the Court are the following motions: (1) Worth's motion for summary judgment as to the EEOC's claims on the ground that the EEOC failed to fulfill its statutory duty to make a good faith effort to conciliate its claims; (2) the EEOC's motion to quash

the notice of deposition of Diane Roberson and in the alternative, motion for protective order; and (3) Worth's motion to compel responses to its discovery requests. For the reasons set forth below, the Court will deny Worth's motion for summary judgment, grant the EEOC's motion to quash, and grant in part and deny in part Worth's motion to compel.

**Background and Procedural History**

Worth is a non-profit corporation that provides in-home health care services to clients with various medical and physical needs. Worth divides its services into two lines: (1) Extracare, which handles typical cases involving patients that need periodic nursing or caregiver services to assist with medications or daily living activities; and (2) Neurotrama, which provides services to individuals with neurological disorders or serious brain injuries requiring more extensive care.

In February 2004, Worth began providing services to Kyle Briggs ("Briggs"), a new Neurotrama client. Briggs, a 35 year-old client, suffered from the effects of a brain injury, seizure disorder, and bipolar disorder. Briggs was a former client of Best Care Nursing Services, which discontinued services due to Briggs' inappropriate behavior. After performing a screening assessment of Briggs, Worth determined that it could safely provide services to Briggs. Childrey and Wilson, both African-American females, were two of the caregivers assigned to Briggs.

During Briggs' brief stint as a Worth client from February 11, 2004, through March 31, 2004, he made numerous and frequent inappropriate sexual and racial comments to Wilson and Childrey. Briggs' improper behavior soon began to escalate, and he began to improperly touch and sexually assault both women. On one occasion, Briggs placed his hand on Wilson's inner thigh several times and grabbed her vagina. On another occasion, Briggs grabbed Wilson's head and pushed it toward his erect penis. Approximately two weeks later, Briggs raped Childrey at knife point.

Childrey filed a Charge of Discrimination with the EEOC on June 7, 2004, in which she alleged that Worth violated Title VII by subjecting her to sexual and/or racial harassment by Briggs, by assigning her and other African-American employees to the dangerous third shift while allowing Caucasian employees to work the more favorable first and second shifts, and by allowing Caucasian employees to be taken off a case if they felt uncomfortable while denying similar requests by African-American employees. On July 8, 2004, the EEOC sent Worth a Notice of Charge of Discrimination, along with a copy of Childrey's charge, and requested that Worth submit a position statement by July 28, 2004. The EEOC assigned the case to investigator Diane Roberson ("Roberson"). On November 11, 2004, after several stipulated extensions, due in part to disclosure concerns under HIPPA,[1] Worth's counsel submitted a lengthy position statement and voluminous documents responding to Childrey's allegations. Among other things, Worth's submission recounted Briggs' history, Worth's assessment of Briggs and its adoption of safety precautions specifically tailored to his behavioral issues, and the events leading up to the March 31, 2004, incident. Worth also set forth its legal analysis of the claims and its reasons why it was not responsible for Briggs' conduct or otherwise liable.

On March 17, 2005, Roberson sent a predetermination letter to Worth's counsel, Lori Gibson ("Gibson"), indicating Roberson's intent to recommend a finding of cause in connection with her investigation of Childrey's charge. Roberson summarized her conclusions as follows:

> On June 7, 2004, a charge of discrimination was filed in which the charging party alleges that she was subjected to ongoing sexual harassment, because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. You should be aware that the investigation revealed evidence supporting that the charging party was discriminated against because of her sex, in that she was subjected to sexual harassment, and that your organization failed to take prompt and remedial action.

---

[1] The Health Insurance Portability and Accountability Act of 1996.

3

(Letter from Roberson to Gibson of 3/17/05.) On March 30, 2005, the EEOC issued its cause determination, concluding that Childrey was subjected to sexual and racial harassment and other similarly situated female employees were subjected to ongoing sexual harassment while working for Worth. (3/30/05 EEOC Determination Letter.) The determination letter stated that an EEOC representative would "be in contact with each party in the near future to begin the conciliation process." (Id. at 1.) In addition, the EEOC enclosed a proposed conciliation agreement which provided, among other things, the following items of relief to Childrey: (1) back pay from March 31, 2004, to the present; (2) front pay; (3) reimbursement of job search and relocation expenses; (4) punitive damages in the amount of $150,000; (5) compensatory damages in the amount of $150,000; and (6) expungement from Childrey's personnel file all documents and entries relating to her discharge. (Proposed Conciliation Agreement at 2.) In addition, the proposed agreement provided for relief to each class member of $75,000 in punitive damages and $75,000 in compensatory damages. (Id. at 3.) Finally, the proposed agreement required Worth to post a form EEOC Notice to employees and applicants. (Id. at 4.)

On April 5, 2004, Gibson wrote a letter to Roberson confirming Roberson's voice mail message agreeing to an extension of time for Worth to respond to the determination letter and proposed conciliation agreement. (Letter from Gibson to Roberson of 4/5/05.) Gibson requested to speak with Roberson before meeting with her client, noting that she had attempted to reach Roberson several times by phone during the period between her receipt of the predetermination letter and her receipt of the determination letter, without success. Gibson stated that her client had several questions regarding: (1) the basis for the determination of cause; (2) the duration of the front pay award and Childrey's obligation to mitigate her damages; (3) the basis for the class action and proposed remedy; (4) the facts supporting the EEOC's recommendation for punitive damages; (5) the reason for the EEOC's reference to Childrey's discharge, when Childrey was on worker's

4

compensation but had never been discharged; and (6) the EEOC's position regarding Worth's evidence that Childrey had falsified a number of her allegations. (Id. at 2.) In closing, Gibson explained: "Certainly my client does not agree with the EEOC's determination, but my point is not to argue the merits of the case. Rather, I need this information to guide my client in an informed discussion regarding the Conciliation Agreement." (Id.)

On April 15, 2005, Gibson faxed Worth's response to the conciliation agreement to Roberson. (Letter from Gibson to Roberson of 4/15/05.) Gibson stated that Worth rejected the proposal, noting that: (1) a back pay award would not be proper in light of Childrey's receipt of worker's compensation benefits; (2) front pay would be inappropriate in light of Worth's medical evidence that Childrey was exaggerating her emotional symptoms and did not have any desire to seek treatment; (3) Childrey was never discharged and could return to work at any time; (4) there is no basis for an award of punitive damages because Worth could not foresee the attack by Briggs; (5) there is no factual basis for a class or class relief; and (6) Worth already has an appropriate policy against sexual harassment. (Id. at 1-2.) Gibson did state, however, that Worth would be willing to pay Childrey $25,000 in compensatory damages and up to $5,000 towards counseling, conditioned upon a number of things, including a release of all claims by Childrey. (Id. at 2-3.) Gibson again noted her attempts to contact Roberson as well as her client's frustration that "the EEOC will not engage in a dialogue with us or give us guidance to work from as we consider a possible resolution of this matter." (Id. at 4.) Finally, Gibson reiterated her request that Roberson call her to discuss the matter. (Id. at 4-5.)

On May 4, 2005, Roberson sent a brief letter to Gibson notifying her that the EEOC had discussed Worth's counter-offer with Childrey and that it was "unacceptable." Roberson also stated that "[i]f you would like to submit another proposal we would be happy to look at it," but that the EEOC would fail the conciliation if Worth did not respond by May 13, 2005. (Letter from Roberson

5

to Gibson of 5/4/05.) Worth did not submit an additional response, and on May 19, 2005, the EEOC sent Worth a letter stating that conciliation had failed. Approximately five weeks later, on June 28, 2005, the EEOC filed its complaint in this case.

Although there is no dispute about the parties' documentary exchanges and their positions set forth therein regarding their views on conciliation, there is significant dispute about the content, or occurrence, of telephone communications between the parties. Worth contends that in spite of its repeated requests for a meeting to discuss the issue, the EEOC failed or refused to engage in a discussion and failed to identify for Worth the basis for its cause determination. As support for its version of events, Worth relies upon two affidavits by Gibson, one submitted in support of Worth's motion for summary judgment and a second submitted in support of its reply. In those affidavits, Gibson states that, although she made numerous attempts to contact Roberson by telephone, she never actually spoke with or communicated by e-mail with Roberson at any time from July 2004 through May 19, 2005, and, therefore, never had any conversations with the EEOC regarding the basis for its determination. (Gibson 12/20/05 Aff. ¶¶ 2-3, 5-6, 8.) Gibson claims that she attempted to contact Roberson on several occasions between March 21 – the day she received the predetermination letter – and April 12, each time reaching Roberson's voicemail. (Gibson 10/4/05 Aff. ¶¶ 4, 6, 8.) Gibson states that usually she left detailed messages for Roberson but on at least two occasions Roberson's voicemail box was full and would not accept messages. (Id.) Gibson further states that she left a message for Roberson's supervisor, Linda Sankovich, on one occasion, and that Roberson left a return message the following day but did not respond to her request for discussion. (Id. ¶ 6.) Gibson also claims that Roberson left a voicemail message on April 12 that simply stated that she was returning Gibson's call and did not offer a time to meet or talk by telephone. (Id. ¶ 8.) Gibson denies that Roberson's voicemail message ever suggested that callers contact Sankovich if they could not reach Roberson. (Gibson 12/20/05 Aff. ¶ 10.)

6

Roberson's account of events differs substantially from Gibson's account. Roberson states that she was in and out of her office frequently between March and June 2005 because of a medical condition – a fact that is not disputed. (Roberson Aff. ¶ 2.) Roberson states that while she was out of the office, her voicemail message instructed callers to contact either the receptionist at the front desk or Sankovich and that Gibson apparently did not choose either option when attempting to contact Roberson. (Id. ¶ 5.) Roberson states that a day or two after her April 5, 2005, telephone call to Gibson, in which left a voicemail for Gibson stating that Worth could have an extension of time to respond to the determination letter and that Gibson should contact Sankovich if Roberson was not available, (id. ¶ 9), she contacted Gibson by telephone and explained to Gibson, as she had done during previous telephone conversations, that the cause determination was due to the "egregious acts of sexual and racial harassment that had occurred to both . . . Childrey and Wilson, and the lack of response by [Worth], even though according to [Gibson's] Position Statement, Brigs' [sic] behavior had been escalating." (Id. ¶ 10.) Roberson adds that after receiving Gibson's April 15, 2005, letter setting forth Worth's counter-offer, she contacted Gibson and explained that the $25,000 counter-offer was "clearly unacceptable to the Commission and Childrey," that it was clear from Worth's Position Statement that Briggs' violent behavior had been escalating and that Worth had not taken steps to protect its staff, and that the EEOC's legal staff had advised Roberson that Worth had a duty to protect its employees from violent patients. (Id. ¶13.) Finally, Roberson states that although she followed up on that conversation by sending her May 4, 2005, letter to Gibson stating that the $25,000 offer was insufficient but inviting her to submit other reasonable counter-offers for discussion, she had no choice but to fail conciliation on May 17, 2005, because Gibson failed to submit any further information or proposals. (Id. ¶¶ 14, 15.)

Worth filed its motion for summary judgment on October 6, 2005, and on November 17, 2005, Worth served its first set of consolidated discovery requests upon the EEOC and Childrey and

7

Wilson. One of the interrogatories directed to the EEOC concerned the identities of all persons having knowledge of the EEOC's efforts to conciliate the matter. The EEOC filed its response to Worth's motion for summary judgment on November 21, 2005. On December 7, 2005, Worth served its second set of consolidated discovery requests upon the EEOC and Childrey and Wilson. This request contained sixteen requests for production of documents relating to Roberson's allegations in her affidavit regarding her communications with Gibson during conciliation. In addition, on December 8, 2005, Worth served on the EEOC a notice of Roberson's deposition. Worth filed its reply in support of its motion for summary judgment on December 20, 2005. On January 10, 2006, the EEOC filed a motion to quash the notice of deposition of Roberson, and on January 18, 2006, Worth filed its motion to compel regarding its first set of discovery requests. By letter dated January 13, 2006, Worth's counsel requested that the Court defer its decision on the motion for summary judgment pending the resolution of the discovery matters.

## Discussion

**I.     Motion for Summary Judgment**[2]

### A.     Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

---

[2]Because conciliation is merely a statutory prerequisite to filing suit, some courts have questioned whether the EEOC's inadequate conciliation efforts provide a basis for summary judgment. See EEOC v. Dial Corp., 156 F. Supp. 2d 926, 942 n.11 (N.D. Ill. 2001). Rather, courts generally hold that the appropriate remedy is a stay of the proceedings to permit the parties to engage in conciliation. See id. In any event, because both parties have proceeded on the assumption that summary judgment is the proper procedural vehicle and have presented extrinsic evidence in support of their respective positions, the Court will treat the motion as one brought under Rule 56. See EEOC v. Heart of Am., No. 03 C 50269, at *1 (N.D. Ill. Nov. 10, 2003).

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992)(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

**B.     Analysis**

Pursuant to Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b), if the EEOC, after investigation, determines that reasonable cause exists to believe that a charge of discrimination is true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." The EEOC may file suit only after it "has been unable to secure from the respondent a conciliation agreement acceptable to the [EEOC]." 42 U.S.C. § 2000e-5(f)(1). Thus, the EEOC is required to make a "good faith" effort to conciliate before filing suit. See EEOC v. Dial Corp., 156 F. Supp. 2d 926, 940 (N.D. Ill. 2001).

The standard in the Sixth Circuit for evaluating whether the EEOC has met its statutory duty to conciliate in good faith is set forth in EEOC v. Keco Industries, Inc., 748 F.2d 1097 (6th Cir. 1984). The EEOC need only "make a good faith effort to conciliate the claim." Id. at 1102. "The district court should only determine whether the EEOC made an attempt at conciliation. The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review." Id. at 1102. Thus, the form and substance of the EEOC's conciliation proposals are not subject to judicial second-guessing. See EEOC v. Kaiser Found. Health Plan, Inc., No. 1:98 CV 2839, 1999 WL 420116 (N.D. Ohio May 12, 1999). See also EEOC v. Pac. Maritime Ass'n, 188 F.R.D. 379, 381 (D. Or. 1999) ("The court should not 'examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide.'") (quoting EEOC v. Zia

9

Co., 582 F.2d 527, 533 (10th Cir. 1978)). "The EEOC may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction, so long as it makes a sincere and reasonable effort to negotiate by providing the defendant an 'adequate opportunity to respond to all charges and negotiate possible settlements.'" EEOC v. Prudential Fed. Savs. & Loan Ass'n, 763 F.2d 1166, 1169 (10th Cir. 1985) (citation omitted) (quoting Marshall v. Hartford Fire Ins. Co., 78 F.R.D. 97, 107 (D. Conn. 1978)). The EEOC's obligation to conciliate ends once the employer rejects its offer. See Keco Indus., Inc., 748 F.2d at 1102 (stating that "once the employer rejects the conciliation attempts, the EEOC is free to file suit under Title VII").

Having considered the correspondences and other documents that the parties have submitted in support of and in opposition to the motion for summary judgment, the Court concludes that the EEOC made a reasonable effort to negotiate in good faith and therefore fulfilled its obligation under Title VII to conciliate before filing suit. Although, as set forth above, a factual dispute exists regarding whether or to what extent Roberson and Gibson had telephone conversations, the dispute is not material to the Court's decision on the conciliation issue. In considering whether the EEOC has fulfilled its duty to conciliate, courts often note that because conciliation requires at least two parties, one party's conciliation efforts should be evaluated "'with an eye to the conduct of the other party.'" Prudential Fed. Savs. & Loan Ass'n, 763 F.2d at 1169 (quoting Marshall v. Sun Oil Co., 605 F.2d 1331, 1335 (5th Cir. 1979)). Here, the written exchanges between the parties provide a sufficient basis to determine the adequacy of conciliation efforts.

First, the EEOC provided Worth with an explanation of the basis for its determination of its reasonable cause determination. In Roberson's March 17, 2005, predetermination letter to Gibson, and in the March 30, 2005, determination letter, the EEOC explained that the basis for its finding was that its investigation showed that Childrey was subjected to sexual and racial harassment and that Worth failed to take prompt and remedial action. Although both letters were brief, the EEOC

10

was not required to explain the basis for its findings in detail or to Worth's satisfaction, see id., and it was not required to consider every piece of evidence that Worth submitted. See EEOC v. Chi. Miniature Lamp Works, 526 F. Supp. 974, 975 (N.D. Ill. 1981) ("EEOC's determination of reasonable cause and the nature of its investigation are completely discretionary. EEOC is not required to create a record or hold any sort of hearing. It is permitted to gather any evidence it deems appropriate."). Moreover, Worth cannot reasonably claim that it was unaware of the basis for the EEOC's finding of cause because both the predetermination letter and the determination letter referenced the name of the claimant and the case number, and the EEOC had provided a copy of the charge to Worth. In fact, Worth's twenty-four page position statement shows that Worth was intimately familiar with the factual and legal issues raised in the charge.

Second, the EEOC offered Worth an opportunity for voluntary compliance by submitting a proposed conciliation agreement to Worth for its consideration. The proposed agreement specified eleven categories of relief, including compensatory damages, punitive damages, front pay, and back pay.

Finally, the EEOC did not present the agreement on a take-it-or-leave-it basis. Instead, it requested a response from Worth and agreed to Worth's request for a reasonable extension of time to respond. When Worth responded in its April 15, 2005, letter, it essentially rejected all of the items of relief, although it did offer to pay Childrey $25,000 in compensatory damages and to reimburse her up to $5,000 towards counseling or job search efforts, although this offer was subject to certain conditions, such as a release of all claims. Worth provided a detailed explanation for its rejection of many of the specific items of relief, referring to them as either "inappropriate" or "unwarranted." Worth's position, as set forth in Gibson's April 15, 2005, letter, made it reasonably clear that further negotiations would be futile if the EEOC continued to insist on various items of relief, such as

11

punitive damages, front pay, and back pay.³ At this point, under Keco Industries, the EEOC would have been justified in failing conciliation and filing suit. Rather than doing so, however, Roberson sent Gibson a letter less than three weeks later notifying her that Worth's $25,000 offer was not acceptable to Childrey but inviting Worth to submit another proposal by May 13, 2005. Although Worth did not respond by that time (or later), the EEOC did not immediately file suit, but instead waited until late June before doing so. Based upon the documents in the record, it is evident to the Court that both parties have strong beliefs and opinions regarding the merits of Childrey's claim and Worth's corresponding liability for Briggs' actions, such that further attempts at conciliation would have been in vain. In other words, even if Roberson held a face-to-face meeting with Gibson and/or Worth representatives, as Worth claims the EEOC was required to do, there is no reason to conclude that such a meeting would have changed the parties' polarized views. See EEOC v. Sears, Roebuck & Co., 391 F. Supp. 2d 317, 321 (D.N.J. 2005) ("Given the discretion afforded the EEOC in the form and substance of conciliation, it cannot be said that the lack of a face to face meeting renders the EEOC's entire conciliation process a bad faith effort for which dismissal of the claim is the proper remedy.").

Worth attempts to analogize this case to EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256 (11th Cir. 2003), one of the few cases in which a court found that the EEOC conciliated in bad faith and that dismissal and an award of attorney's fees were appropriate. In that case, after investigating the charge for almost three years, the EEOC allowed the defendant only twelve days to accept the proposed nation-wide conciliation agreement or to submit a counter proposal. See 340 F.3d at 1259-60. In addition, the EEOC did not respond to the defendant's request for additional time but instead

---

³Although Gibson stated in her April 5, 2005, letter to Roberson that her intent was not to argue the merits of the determination, in her April 15, 2005, letter, Gibson devoted substantial argument to the EEOC's finding of cause, including a discussion of the social policy implications of holding a health care provider such as Worth liable for the actions of a patient with a brain injury.

12

failed conciliation the very next day after the defendant requested additional time. See id. at 1258-59. Thus, the EEOC failed conciliation without even considering a counter-offer from the defendant. Finally, the EEOC's proposal did not include a theory of liability and requested an impossible remedy (because the project had been terminated and the defendant's Gainesville office had been closed). See id. at 1258. Here, the EEOC issued its determination letter and sent a proposed conciliation agreement to Worth, allowing Worth a reasonable time to respond to the proposal. In contrast to Asplundh, the EEOC granted Worth's request for additional time and actually considered Worth's counter-offer. Although the EEOC rejected the counter-offer, it allowed Worth additional time to submit a second proposal and did not file suit until several weeks later. Thus, this case differs significantly from Asplundh. This case also differs from EEOC v. Bratenahl Place Condominium Association, 644 F. Supp. 218 (N.D. Ohio 1986), because in that case, the EEOC declined the defendant's request for a meeting and failed conciliation without affording the defendant an opportunity to respond and to present a counter-offer. See id. at 220-21. Here, as noted above, Worth submitted a five page response which demonstrated that its position was irreconcilably at odds with the EEOC's position, thus allowing the EEOC to conclude that conciliation had failed.

## II.     Motion to Quash

The EEOC has moved to quash Worth's notice of taking Roberson's deposition, pursuant to which Worth seeks to question Roberson about her communications with Gibson during the conciliation period. For the reasons set forth above, the Court concludes that Roberson's testimony, and the resolution of any conflicts between Roberson's and Gibson's accounts of events, is unnecessary to the Court's determination of whether the EEOC fulfilled its statutory duty to make a good faith effort to conciliate. Because the Court has concluded that the EEOC made a good faith effort to conciliate, Roberson's testimony is irrelevant, and the Court will grant the EEOC's motion.

### III. Motion to Compel

Worth seeks an order compelling the EEOC to answer Worth's first and second discovery requests in a full and complete manner. Worth's second requests consist of sixteen requests for production relating solely to Roberson's allegations in her affidavit regarding her communications with Gibson during the conciliation period. For the same reasons that the Court concludes that the EEOC's motion to quash should be granted, the Court concludes that Worth's motion to compel should be denied with regard to its second discovery requests. Similarly, because interrogatory No. 5 of Worth's interrogatories directed to the EEOC and request for production No. 30 directed to the EEOC in Worth's first set of discovery requests relate to the conciliation process, the Court will deny the motion to compel with regard to that interrogatory and that request for production.

As for the remainder of the motion, it appears that there is a dispute with regard to whether Worth complied with Western District of Michigan Local Rule 7.1(d) before filing the instant motion. In light of the EEOC's apparent willingness to provide more complete answers to most of the document requests, the Court will resolve the issue by assuming that Worth sought concurrence as required by Rule 7.1(d).

Worth first contends that the EEOC's responses to interrogatories No. 1 and 2, which request the EEOC to identify each category of damages claimed for Wilson and Childrey and to state the amount of such damages and describe how they were calculated, are insufficient because the EEOC merely stated that it seeks compensatory and punitive damages in an amount not to exceed that allowed by Title VII. Worth contends that the responses are insufficient because they do not state an amount and do not state how damages were calculated. The EEOC responds that its answer was proper because, in light of the egregious nature of this case, it will be seeking compensatory and punitive damages in an amount not to exceed the statutory limits under Title VII and, because such damages are not subject to precise calculation, the actual amount of damages is for the jury to

14

determine. In any event, the EEOC states that it would have given Worth a more detailed basis for its damage request had Worth complied with Local Rule 7.1(d). The Court will grant Worth's motion with regard to interrogatory Nos. 1 and 2 and will require the EEOC to set forth a specific dollar amount of damages (allowing for the fact that the amount of damages is for the jury to determine), along with a statement of the facts that the EEOC contends support the requested damage amounts.

Worth next contends that the EEOC should be required to identify the specific documents that are responsive to request for production Nos. 9-11, 19-21, and 31-33, instead of merely asserting that the documents have already been produced. Because the EEOC indicates in its response that it has no objection to providing more detailed answers, the Court will order the EEOC to identify the specific documents that are responsive to the requests for production.

Finally, Worth contends that the EEOC should be required to produce its case logs pursuant to request for production No. 31. The EEOC states that it believed that it had produced such logs but, if it did not do so, it was due to a clerical error. In any event, because the EEOC does not dispute that Worth is entitled to the case logs, the Court will order the EEOC to produce them if it has not already done so.

## **Conclusion**

For the foregoing reasons, the Court will deny Worth's motion for summary judgment and grant the EEOC's motion to quash. The Court will also grant in part and deny in part Worth's motion to compel as set forth above.


Dated: March 2, 2006                            /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE