UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KISHA CHILDREY et al.,

       Intervenor-Plaintiffs,                Case No. 1:05-CV-446

v                                                Hon. Jack Zouhary

SPECTRUM HEALTH WORTH HOME
CARE, INC.,

       Defendant.
_____/

**MEMORANDUM ORDER**

Pending before the court is the Intervening Plaintiffs' Consolidated Motion to Compel Discovery of Relevant Financial and Business Records (docket no. 239).  This motion has a lengthy history, having been heard in various forms on several previous occasions.  Essentially, intervening plaintiffs ("plaintiffs") seek from the defendant Spectrum Health Worth Home Care, Inc. discovery pertaining to the financial and corporate status of the defendant.

Spectrum Health Worth Home Care, Inc. ("Worth Home Care") is a non-profit division of Worth Services and subsidiary of Spectrum Health Hospitals and/or Spectrum Health Continuing Care, Inc.   Worth Home Care  provides in-home health care to individuals with neurological disorders or serious brain injuries.  In the present case, plaintiffs were caregivers employed by the defendant to provide services to Kyle Briggs ("Briggs").  Briggs was a patient who suffered from the effects of a brain injury, seizure disorder, and bi-polar disorder.  He had a history of inappropriate behavior and required double staffing.  Briggs subsequently assaulted each of the

1

women, both of whom were African-American.  As a result both women claim their employer – the defendant – violated their federally protected rights to be free from a racially/sexually hostile and dangerous work environment.

In a previous order of this court, dated December 18, 2006, plaintiffs' second and third motions to compel discovery were denied without prejudice, and plaintiffs were permitted to re-file their motion with adequate briefing, plaintiffs having failed to adequately address the Sixth Circuit's decision in *Clark v. Chrysler Corp.,* 436 F.3d 594 (6th Cir. 2006), and this court's earlier decision in *Sherrills v. Bieson,* 1:05-CV-310-RAE (2006), cases which counsel for plaintiffs should have been well aware.  In fact, plaintiffs' counsel was also plaintiffs' counsel in *Sherrills* when his identical motion was denied in that case.  Defendant was the same in both cases, and plaintiffs' counsel raised the same arguments for obtaining defendant's financial records in a motion to compel, alleging that the "financial condition and/or net worth of the employer is relevant in determining punitive damages."  This court, in an opinion by a different judge, rejected plaintiffs' argument and denied the motion to compel discovery of defendant's financial records based on the Sixth Circuit's analysis in *Clark.*

Plaintiffs withdrew their fourth motion to compel discovery in this case upon agreement of the parties and without prejudice.  Plaintiffs were directed by this court on the record, should they file their motion yet again, to distinguish the Sixth Circuit's decision in *Clark* and this court's earlier decision in *Sherrills* from the present case.   Plaintiffs' counsel agreed to do so. Transcript of Motion to Compel hearing, 12/15/2006, at 23-24.

On January 16, 2007, plaintiffs filed their fifth and present motion to compel discovery in this case (docket no. 239) seeking to compel Worth Home Care to produce five years

of financial records along with seven months of documents related to various meetings among defendant's management team and between defendant's management and its parent corporation. Plaintiffs also seek to compel production of corporate documents relating to the purchase of the defendant by Spectrum Health's predecessor over ten years ago. Nowhere in this motion do plaintiffs address the *Sherrills* decision, as requested. Neither have they paid attention to the majority decision in *Clark,* relying almost exclusively on the dissent in that case. This is not helpful either. Arguing that *Clark* was wrongfully decided is not the same as pointing out why its differences from the present case, if any, makes it inapplicable here.

The *Clark* decision is at the heart of this motion. Charles Clark was fatally injured in an automobile accident when another car collided with the 1992 Dodge Ram club cab pickup truck Mr. Clark was driving. Clark's wife sued Chrysler claiming that the pickup was defective and negligently designed because the metal frame of the truck against which the latch closed – the B-pillar – was only made out of a thin piece of metal easily deformed by the impact caused by the accident, which forced open the latch allowing Mr. Clark to be thrown from the truck. Clark's experts testified that the truck's "unboxed" B-pillar design was inadequate to withstand low-impact accidents; that every other manufacturer utilized reinforced, boxed in or supported B-pillar designs that did not experience bypass failure; and that this type B-pillar design was a known failure in the automotive industry. The court instructed the jury it could return a verdict for punitive damages if Chrysler's manufacture of the 1992 Dodge Ram pickup constituted gross negligence (gross negligence being defined as a reckless disregard for the life and safety of other persons, including Charles Clark). The jury returned punitive damages in the amount of $3,000,000.00 and compensatory damages in the amount of $471,000.00.

Although the Appeals Court found the evidence regarding the fraility of the B-pillar to be sufficient to support the jury's decision to award punitive damages, the court did not find the amount of punitive damages to have been appropriately determined. In particular, the appellate court disagreed with the district court's finding that Chrysler's conduct could be considered reprehensible[1] on the basis that Mr. Clark was a purchaser of one of Chrysler's vehicles and Chrysler had substantial financial resources because it sold such vehicles.

Certainly the *Clark* scenario parallels the present case, where plaintiffs were injured by one of the defendant's patients, and defendant arguably has substantial financial resources because it treated such patients (or at least plaintiffs would like to find out if it does through the disputed discovery). The appellate court pointed out in *Chrysler,* however, that Chrysler's wealth had no connection with the actual harm sustained by Mr. Clark.

The court also noted that while the financial vulnerability of a victim is relevant when the harm inflicted is economic in nature, which was not the case in *Clark*, nor is it in this case,[2] even when a plaintiff endures economic injury, the wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award, citing among other cases *Mathias v. Accor Economy*

---

[1]The degree of reprehensibility of the defendant's conduct is the most important indicium of the reasonableness of a punitive damages award. *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 419 (2003).

[2]Plaintiffs acknowledge that the harm inflicted in the present case is not economic in nature. In their brief at 9, they discuss the case of *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 409 (2003), and state as follows:

> "Further, the harm in *Campbell* was economic rather than physical. (Citation omitted.) The instant case, distinguishable from *Campbell* in that regard, clearly is both a physical harm (sexual assault up to and including rape) and a claim that the harm is in fact connected to the desire and ability [of defendant] to profit from this type of case."

*Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003) ("a person is punished for what he does, not for who he is, even if the who is a huge corporation").

The Sixth Circuit concluded that "to serve as a justification for a punitive damage award, a defendant's wealth must bear some relation to the harm sustained by the plaintiff." *Clark, supra*, at 604. Chrysler's wealth, the court said, was an inappropriate basis for the punitive damage award since no economic injury was involved and there was no other connection between Chrysler's financial resources and the physical injury suffered by the plaintiff. *Id.*

Plaintiffs seek minutes of various meetings[3] and numerous financial reports of defendant. Plaintiffs have fixated on the fact that Mr. Briggs' case generated higher than average income for the defendant non-profit because he required two caregivers per shift for two shifts per day seven days a week, with possibly a third shift on Sundays. No other Worth Home Care patient required two caregivers per shift. (Conversely, however, the need for additional caregivers would have also generated higher than average costs to defendant.)

Significantly, the financial information sought by plaintiffs focuses not on Briggs as an individual, but rather an overall financial status of the defendant. These are precisely the types of requests the court rejected in the unreported case of *Pioneer Resources Corporation v. Nami Resources Company*, 2006 W.L. 1635651 (E.D. KY) June 8, 2006, relied upon by plaintiffs. Plaintiffs' brief at 13. In that case, the plaintiff contended that the defendant wrongfully overcharged plaintiff for expenses on four wells and then withheld revenue from those wells. The court denied plaintiff's attempts to obtain financial information about the value of the defendant company or the profits derived from operating over 800 wells not owned by the plaintiff as simply

---

[3]Plaintiffs have already received all minutes mentioning Briggs.

not being at issue. The court stated, "(a)lthough plaintiff contends that the defendant's overall profitability is relevant to punitive damages, there is a significant difference between the profit derived from defendant's alleged misconduct regarding plaintiff's four wells and a generalized inquiry into how deep the defendant's pockets actually are, i.e., the defendant company's overall valuation and the profits from over 800 other wells managed/operated by defendant."

The court also denied requests for documentation evidencing the "overall financial condition" of the defendant, which is the type of information plaintiffs seek in the present case when they request defendant's "annual financial statements and balance sheets for calendar years 2000 through 2005," "all . . . reporting of Worth Home Care financial standing, including census, different types of insurance payments Worth Home Care received, and including but not limited to financial reports of each service line (Worth Home Care, Worth Rehab, Worth Residential, Neurotrauma, and Visiting Nurse Extra Care)," "all Worth Home Care financial reports presented to the Continuing Care Group Board" etc.[4] Since a defendant's wealth must bear some relation to the harm sustained by the plaintiffs to serve as a justification for a punitive damages award, *Clark*, *supra*, at 604, and these numbers clearly would not, they are not relevant discovery material.

Plaintiffs also seek corporate documents relating to the purchase of the defendant business a decade earlier.

Worth Home Care, Inc. is a non-profit entity funded solely by private pay patients or no-fault insurance. It receives no funds from Medicare, Medicaid, or Blue Cross Blue Shield.

---

[4] Plaintiffs point out for reasons not entirely clear that the money that defendant took in because of Briggs did not have "to be discounted from their regular billing rate as would be done by Medicare, Medicaid or other government sources." Of course, the same was true for all of their patients, since defendant did not accept payments from Medicare, Medicaid, or other government sources.

6

As a non-profit organization, it has no profits and pays no shareholders.  To the extent that revenues may exceed expenses and are not retained to offset anticipated future losses, they are rolled over into a separate division of Worth Services which provides elder care to the community.  There is no allegation in plaintiffs' complaint that the defendant is not properly a non-profit.  Both the fact that the business may have been run for profit when it was purchased by defendant some ten years prior to the incident, and  plaintiffs' request for information concerning that transaction, are simply irrelevant to the claims of racial and sexual discrimination presently before the court.

For the reasons stated, plaintiffs' consolidated motion to compel discovery (docket no. 239) is DENIED.

Furthermore, the court previously informed plaintiffs' counsel that if plaintiffs brought another motion pertaining to the discovery issues discussed above and did not prevail, defendant would be entitled to reasonable expenses including attorney's fees in light of the repeated motions filed.  See Rule 37(a)(4)(B).  Accordingly, defendant is awarded expenses, including attorney's fees, in the amount of $1,000.00, payable within 21 days of the date of this order; provided, however, that if either side believes this is not an appropriate figure, they shall notify the opposing side within ten days of the date of this order, and within ten days after that date, defendant shall file an affidavit and papers supporting what it believes are proper expenses and attorney's fees, whether that amount is more or less than this amount.  Within ten days of receipt of this affidavit, plaintiffs' counsel shall respond in kind.  Absent further notice from the court scheduling a hearing

on the issue of expenses and attorney's fees, the court will resolve the matter on the papers submitted by the parties.

        IT IS SO ORDERED.

Dated:  June 11, 2007                      /s/ Hugh W. Brenneman, Jr.
                                                          Hugh W. Brenneman, Jr.
                                                          United States Magistrate Judge